# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

COLONY INSURANCE COMPANY,

    Plaintiff,

        v.

MID-ATLANTIC YOUTH SERVICES
CORP. and ROBERT J. POWELL,

    Defendants,

CIVIL ACTION NO. 3:09-CV-1773

(JUDGE CAPUTO)

## MEMORANDUM

Presently before the Court is Defendant Mid-Atlantic Youth Services Corporation's ("MAYS") Motion for Judgment Pursuant to Rule 12(b)(6).[1] For the reasons discussed more fully below, its motion will be denied.

## BACKGROUND

In the instant case, Plaintiff Colony Insurance Company ("Colony") has filed a Complaint seeking a declaration that it does not owe MAYS or Defendant Robert J. Powell a duty to defend Defendants in an underlying civil litigation against them (Count I), nor does it owe a duty to indemnify Defendants in the underlying civil litigation (Count II).

### A.   The Underlying Case

The instant suit arises out of the following cases filed in the Middle District of Pennsylvania: *Wallace v. Powell*, No. 3:09-cv-0286, *Conway v. Conahan*, No. 3:09-cv-0291,

---

[1] Plaintiff makes much of the fact that MAYS has entitled this motion a "Motion for Judgment" pursuant to Federal Rule of Civil Procedure 12(b)(6), rather than a motion to dismiss. However, because MAYS has pointed to the Rule through which it seeks to file its motion, this Court will treat the instant motion as a motion to dismiss Plaintiff's Complaint for failure to state a claim on which relief can be granted, as outlined in Rule 12(b)(6).

*H.T. v. Ciavarella*, No. 3:09-cv-0357, and *Humanik v. Ciavarella*, No. 3:09-cv-0630. These suits have all been consolidated under civil action number 3:09-cv-0286 by this Court's Case Management Order of May 14, 2009. The factual background of the underlying consolidated case can be found in *Wallace v. Powell*, No. 3:09-cv-0286, 2009 WL 4051974 (M.D. Pa. Nov. 20, 2009). This opinion will only relate the facts necessary for an understanding of the current declaratory judgment suit.

There are two complaints in the underlying suit, the Master Individual Complaint ("MIC") and the Master Class Action Complaint ("MCAC"). The MIC alleges that MAYS was an entity responsible for operating juvenile detention facilities, and that Powell is "an owner, officer, shareholder, and operator" of MAYS. MAYS and Powell were part of a conspiracy in which two Luzerne County judges received kickbacks for maintaining a high rate of occupancy in the juvenile detention facilities run by Powell and managed by MAYS. As part of this conspiracy, the judges would often violate the civil rights the juveniles appearing before them by denying them right to counsel and ensuring disproportionately large sentences, among other things. The MIC charges Powell and MAYS with Violation of the RICO Act (Count I), Conspiracy to Violate the RICO Act (Count II), Deprivation of Substantive and Procedural Due Process pursuant to 42 U.S.C. § 1983 (Count III), Deprivation of Rights Pursuant to 42 U.S.C. § 1983 (Count IV), Deprivation of Substantive Due Process pursuant to 42 U.S.C. § 1983 (Count V), Civil Conspiracy (Count VIII), and False Imprisonment (Count IX).

The MCAC alleges that Powell was the owner of MAYS. The factual allegations that make up the MCAC are, for the purposes of this motion, very similar to those in the MIC. The claims against MAYS and Powell in the MCAC are Conspiracy to Violate Plaintiffs' Right to

an Impartial Tribunal Guaranteed by the Fifth, Sixth and Fourteenth Amendments, pursuant to 42 U.S.C. § 1983) (Count II), Conspiracy to Deprive Youth of Their Right to Counsel an/or Knowing, Intelligent, and Voluntary Guilty Plea in violation of the Fifth, Sixth and Fourteenth Amendments, pursuant to 42 U.S.C. § 1983 (Count IV), Civil RICO Act violations pursuant to 18 U.S.C. § 1962(c) (Count V), Civil RICO Act violations pursuant to 18 U.S.C. § 1962(b) (Count VI), Civil RICO Act violations pursuant to 18 U.S.C. § 1962(d) (Count VII), and Wrongful Imprisonment (Count IX).

### B. The Colony Policy

MAYS took out a Liability Insurance Policy with Colony that became effective on May 24, 2008. There are three policy sections that are potentially pertinent to this case. The first is the "Bodily Injury and Property Damage Liability" in Coverage A, which provides that Colony "will have the right and duty to defend the insured" against any suit seeking damages for "bodily injury" or "property damage." Bodily injury is defined as "sickness disease, assault, battery, or mental anguish or 'damages' claimed by any person or organization for care, loss of services or death resulting from any of these at any time." However the bodily injury coverage only applies if the "'bodily injury' . . . is caused by an "occurrence" that takes place in the 'coverage territory.'" Occurrence is defined as "[a]n accident, including continuous or repeated exposure to substantially the same general harmful conditions." Thus, in order for the coverage to apply, the bodily injury must have been the result of an accident.

Also at play is Coverage B, which provides coverage for "Personal and Advertising Injury Liability." This coverage gives Colony the right and duty to defend MAYS in suits that claim damages for "personal and advertising injury." For the purposes of this case, personal and advertising injury includes false arrest, detention or imprisonment and malicious

prosecution. However, Coverage B excludes acts that are a "knowing violation of [the] rights of another." Under this policy exclusion, the insurance coverage does not apply to any "'personal and advertising injury' caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict 'personal and advertising injury.'"

Finally, Coverage D provides insurance protection for "Professional Liability." This Coverage applies to "wrongful act(s)," which are defined as a) beach of duty, b) neglect, error, misstatement, misleading statement, omission or act, or c) violation of civil rights. Like Coverage A, Coverage D only gives Colony the right and duty to defend a suit that is the result of a "wrongful act" that is caused by an "occurrence."

### C. Procedural History

After the underlying suit was filed, MAYS provided Colony with notice of the suit and requested that colony defend MAYS. Colony agreed to provide a defense to Powell and MAYS subject to a full reservation of rights, but advise MAYS that it Colony does not believe that there is coverage for the underlying suit. On September 14, 2009, Colony filed the Complaint in the instant suit, seeking a Declaratory Judgement that it owes MAYS and Powell neither a duty to defend nor a duty to indemnify. MAYS filed the instant motion to dismiss on December 4, 2009. The motion has been fully briefed and is currently ripe for disposition.

## **LEGAL STANDARD**

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted. Dismissal is

4

appropriate only if, accepting as true all the facts alleged in the complaint, a plaintiff has not pleaded "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), meaning enough factual allegations "'to raise a reasonable expectation that discovery will reveal evidence of'" each necessary element, *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556); *see also Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993) (requiring a complaint to set forth information from which each element of a claim may be inferred). In light of Federal Rule of Civil Procedure 8(a)(2), the statement need only "'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (quoting *Twombly*, 550 U.S. at 555). "[T]he factual detail in a complaint [must not be] so undeveloped that it does not provide a defendant [with] the type of notice of claim which is contemplated by Rule 8." *Phillips*, 515 F.3d at 232; *see also Airborne Beepers & Video, Inc. v. AT&T Mobility LLC*, 499 F.3d 663, 667 (7th Cir. 2007).

In deciding a motion to dismiss, the Court should consider the allegations in the complaint, exhibits attached to the complaint, and matters of public record. *See Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). The Court may also consider "undisputedly authentic" documents when the plaintiff's claims are based on the documents and the defendant has attached copies of the documents to the motion to dismiss. *Id.* The Court need not assume the plaintiff can prove facts that were not alleged in the complaint, *see City of Pittsburgh v. W. Penn Power Co.*, 147 F.3d 256, 263 & n.13 (3d Cir. 1998), or credit a complaint's "'bald assertions'" or "'legal conclusions,'" *Morse v. Lower Merion Sch. Dist.,* 132 F.3d 902, 906 (3d Cir. 1997) (quoting *In re Burlington Coat*

*Factory Sec. Litig.*, 114 F.3d 1410, 1429-30 (3d Cir. 1997)). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009).

When considering a Rule 12(b)(6) motion, the Court's role is limited to determining whether a plaintiff is entitled to offer evidence in support of her claims. *See Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974). The Court does not consider whether a plaintiff will ultimately prevail. *See id.* A defendant bears the burden of establishing that a plaintiff's complaint fails to state a claim. *See Gould Elecs. v. United States,* 220 F.3d 169, 178 (3d Cir. 2000).

## DISCUSSION

### A. Interpretation of Insurance Contracts

The interpretation of an insurance contract is a question of law for the court to decide. *Reliance Ins. Co. v. Moessner*, 121 F.3d 895, 900 (3d Cir. 1997) (citing *Standard Venetian Blind v. Am. Empire Ins. Co.*, 469 A.2d 563, 566 (Pa. 1983)). A court must give effect to the plain language of the insurance contract read in its entirety. *Reliance*, 121 F.3d at 901. When the language of an insurance policy is ambiguous, the provision must be construed in favor of the insured. *Reliance*, 121 F.3d at 900-01 (citing *Standard Venetian Blind Co.*, 469 A.2d at 566). Contract language is ambiguous if it is reasonably susceptible to more than one construction and meaning. *Bowersox v. Progressive Cas. Ins. Co.*, 781 A.2d 1236, 1239 (Pa. Super. 2001) (citing *Hutchinson v. Sunbeam Coal Corp.*, 519 A.2d 385, 390 (Pa. 1985)). However, the language of an insurance policy may not be stretched beyond its plain meaning to create an ambiguity. *Madison Constr. Co. v. Harleysville Mut. Ins. Co.*, 735 A.2d

100, 106 (Pa. 1999).

The insured has the initial burden of establishing coverage under the policy. *Butterfield v. Giuntoli*, 670 A.2d 646, 651-52 (Pa. Super. 1995). On the other hand, when the insurer relies on a policy exclusion as the basis for denying coverage, it bears the burden of proving that the exclusion applies. *Mistick, Inc. v. Northwestern Nat. Cas. Co.*, 806 A.2d 39, 42 (Pa. Super. 2002). Policy exclusions are strictly construed against the insurer. *Selko v. Home Ins. Co.*, 139 F.3d 146, 152 n. 3 (3d Cir. 1998) (citing *Standard Venetian Blind*, 469 A.2d at 566).

### B.  Duty to Defend Principles

An insurance carrier's duty to defend is distinct from its duty to provide coverage. It is interpreted more broadly than the duty to indemnify. *Britamco Underwriters, Inc. v. Weiner*, 636 A.2d 649, 651 (Pa. Super. 1994). An insurer may have a duty to defend even though it may have no duty to indemnify. *Frog, Switch & Mfg. Co. v. Travelers Ins. Co.*, 193 F.3d 742, 746 (3d Cir. 1999).

An insurer's duty to defend is determined by the allegations in the underlying complaint. *Whole Enchilada, Inc. v. Travelers Property Casualty Co. of America*, 581 F. Supp.2d 677, 694 (W.D. Pa. 2008). To determine whether there is a duty to defend, the Court must compare coverage under the policy with the factual allegations contained in the four corners of the complaint. *Id.* Consequently, whenever a complaint filed against the insured could potentially come within the policy's coverage, the insurer's duty to defend is triggered. *Belser v. Rockwood Cas. Inc. Co.*, 791 A.2d 1216, 1219, 1222 (Pa. Super 2002); *Phico Ins. Co. v. Presbyterian Med. Servs. Corp.*, 663 A.2d 753, 755 (Pa. Super 1995). If a

7

single claim in a complaint containing multiple claims is potentially covered, the duty to defend attaches until the underlying plaintiff can no longer recover on a covered claim. *Frog, Switch & Mfg. Co.*, 193 F.3d at 746.

Because the duty to defend is broader than the duty to indemnify, the complaint must be construed liberally, the factual allegations must be accepted as true, and all doubts as to coverage resolved in favor of the insured. *Roman Mosaic & Tile Co. v. Aetna Cas. & Sur. Co.,* 704 A.2d 665, 669 (Pa. Super. 1997). However, to prevent artful pleading designed to avoid policy exclusions, it is necessary to look at the factual allegations in the complaint, and not how the underlying plaintiff frames the request for relief. *Mut. Benefit Ins. Co. v. Haver, 725 A.2d 743, 745* (Pa. 1999). In other words, while the allegations in the underlying complaint will trigger a duty to defend, it is not the particular cause of action alleged that is determinative of whether there is coverage; instead, it is the factual allegations in the complaint that determine whether there is coverage. *Whole Enchilada*, 581 F. Supp.2d at 694.

### C. Coverages A and D

Both Coverages A and D only apply if the "bodily injury" or "wrongful act(s)" are the result of an "occurrence." As noted above, "occurrence" is defined as "[a]n accident, including continuous or repeated exposure to substantially the same general harmful conditions."

In the Third Circuit, it is well-settled what qualifies as an "accident" for the purposes of an occurrence-based policy like the one at issue in the instant suit. In *Nationwide Mutual Fire Ins. Co. v. Pipher*, 140 F.3d 222, 226 (3d Cir. 1998), the Third Circuit Court of Appeals

8

held that whether the underlying injury for which the insured seeks defense is an accident "must be determined *from the perspective of the insured* and not from the viewpoint of the person who committed the injurious act." Thus, when the injury or damage is directly attributable to the intentional act of a third party as well as the negligence of the insured, it is an occurrence or accident that will require the insurer to defend its insured. *Id.* at 228. The *Pipher* court held "that the insurer is obligated to defend under such policy . . . when the complaint alleges the insured's negligence." *Id*.

*Pipher* was clearing up some confusion that had been caused by a Pennsylvania state court case, *Gene's Restaurant*, *Inc. v. Nationwide Ins. Co.*, 548 A.2d 246 (1988). In *Gene's Restaurant*, the complaint alleged that the injured party was a patron in the defendant-insured's restaurant who had been violently assaulted, causing damages; notably, the complaint contained no allegations of negligence on the part of the insured. 548 A.2d at 247; *see also Pipher*, 140 F.3d at 224. The Third Circuit Court of Appeals "believe[d] the holding in *Gene's Restaurant* was narrow and predicated on the well-established rule of insurance law that an insurer's duty to defend an action brought against its insured is to be determined solely by the allegations contained in the plaintiff's pleadings." *Pipher*, 140 F.3d at 225. Therefore, because the complaint alleged only intentional acts and no allegations of negligence, "the *Gene's Restaurant* court came to the unremarkable conclusion that an intentional tort was not an accident and thus not a covered occurrence under the policy." *Id.*

This case is more like *Gene's Restaurant* than *Pipher*. There are no allegations of negligence against either MAYS or Powell. Instead, both the MIC and MCAC allege intentional conspiratorial activity on the part of the underlying defendants, including MAYS

9

and Powell. The underlying complaints allege that MAYS and Powell were malicious, reckless, and/or wanton, but do not allege in any way that MAYS and Powell were negligent. Reckless, malicious, or purposeful conspiratorial activities are not "negligent" and cannot be considered "accidents" under the plain language of an occurrence-based insurance policy, like the one at bar. *See Legion Indemnification Co. v. Carestate Ambulance Inc.*, 152 F. Supp.2d 707, 716-718 (E.D. Pa. 2001) (holding that reckless or grossly negligent action and civil conspiracy are not covered "occurrences" in policy that defines "occurrence" as an "accident"). Therefore, by their plain and unambiguous language, Coverages A and D cannot potentially apply to the facts alleged in the underlying complaints.

### D. Coverage B

On its face, it would seem that Coverage B is applicable in this case; the MIC brings a count against MAYS and Powell for False Imprisonment and the MCAC contains a count for Wrongful Imprisonment. However, the policy excludes false imprisonment that is caused by Mays or Powell with the knowledge that their acts would violate the rights of another. As noted above, it is the factual allegations in the complaint, not the particular cause of action that govern whether the policy is applicable to the underlying complaint such that the duty to defend is triggered. *Whole Enchilada*, 581 F. Supp.2d at 694. On the other hand, policy exclusions are to be read narrowly against the insurer. *Selko v. Home Ins. Co.*, 139 F.3d at 152 n.3. Even reading the knowing violations exclusion narrowly against Colony, the actions of MAYS and Powell definitely fall within this exclusion to Coverage B's reach.

The MCAC alleges that MAYS and Powell entered into a corrupt conspiracy with Luzerne County judges, whereby the judges would receive payment from MAYS and Powell to ensure that the underlying plaintiffs would be placed in the detention facilities owned by Powell and managed by MAYS. (MCAC at ¶ 790.) It further alleges that MAYS and Powell

"participated in this corrupt conspiracy" and detained the underlying plaintiffs in the detention facilities "in spite of the corruption and illegality underlying the detenion orders." (MCAC at ¶ 791.)

Similarly, the False Imprisonment count in the MIC also alleges that MAYS and Powell knowingly violated the rights of the underlying plaintiffs. It alleges that MAYS and Powell conspired to facilitate the detention of the plaintiffs by paying kickbacks to Luzerne County judges. (MIC ¶ 168.) The MIC further alleges that MAYS and Powell were part of a "conspiracy that lead to false imprisonment" that was based on detention orders that MAYS and Powell knew or should have known were procured by illegal means.

Even reading the knowing violation exclusion strictly against Colony, the underlying complaints clearly allege that MAYS and Powell were part of a conspiracy in which they committed false imprisonment of the underlying plaintiff with the knowledge that their detention had been procured by violating the constitutional rights of the plaintiffs. It is alleged that MAYS and Powell knew of these deprivations because it was part of the scheme, funded by their kickbacks, to facilitate detention of the juveniles in the facilities owned by Powell and managed by MAYS. Even though the MIC and MCAC make out claims for false imprisonment that would otherwise fall under the protection of Coverage B, the alleged knowing violation of the underlying plaintiffs' rights trigger the "knowing violation" exclusion and strip Colony of its duty to defend against the allegations in the underlying complaints.

### E. Duty to Indemnify

Because the duty to indemnify narrower than the duty to defend, it follows that any time there is no duty to defend, there is no duty to indemnify. *See Lucker Mfg. v. Home Ins. Co.*, 23 F.3d 808, 821 (3d Cir. 1994). As discussed, MAYS has not shown that Colony has a duty to defend. Therefore, it cannot currently prove that MAYS also has a duty to

11

indemnify. Therefore, the motion to dismiss the duty to indemnify claim will be denied.

## **CONCLUSION**

For the foregoing reasons, Defendant MAYS Motion to Dismiss will be denied. An appropriate order follows.


March 9, 2010 ./s/ A. Richard Caputo
Date A. Richard Caputo
United States District Judge

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| COLONY INSURANCE COMPANY, | |
| Plaintiff, | CIVIL ACTION NO. 3:09-CV-1773 |
| v. | |
| MID-ATLANTIC YOUTH SERVICES CORP. and ROBERT J. POWELL, | (JUDGE CAPUTO) |
| Defendants. | |

## ORDER

**NOW**, this  9th  day of March, 2010, **IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss (Doc. 21) is **DENIED.**

                                                  /s/ A. Richard Caputo
                                                  A. Richard Caputo
                                                  United States District Judge